■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIE HOWARD, Appellant.—Judgment of the Supreme Court, New York County (Herman Cahn, J.), rendered June 19, 1985, after jury trial, convicting defendant of robbery in the third degree and sentencing him, as a second felony offender, to an indeterminate term of imprisonment of from 3½ to 7 years, unanimously affirmed.

On July 25, 1984, at about 5:25 P.M., defendant snatched complainant's purse in Central Park, escaping in a stolen automobile driven by David Morris. Officer Andrew Gillespie responded to complainant's screams for help and, not knowing the description of the escape vehicle, nevertheless attempted to pursue the perpetrators north on East Drive. About half a block from the scene, a motorist in a parked car told Gillespie that the men he was chasing were driving north in a gray Toyota with New Jersey plates bearing a partial license number of 391. Gillespie radioed this information to his fellow officers.

Officer Frederick Foggy and Sergeant Napoleon Paz, while on radio patrol in the area of 106th Street and Park Avenue, received messages indicating that a robbery had been committed in the park by two male blacks, one with a white shirt, driving a silver car with New Jersey plates bearing partial license number 391, which had probably exited Central Park at 102nd Street. A third message said the car was seen heading south. Officer Foggy saw the car, which was in fact a Fiat, proceeding south in the area of 96th Street, and put on his siren and lights. The car pulled over at a bus stop and two black males, one wearing a white tee shirt, left the car and hurried into the subway station, pursued by Officer Foggy and Sergeant Paz, who apprehended the suspects and placed them under arrest. Defendant was found in possession of complainant's checkbook and credit cards; Morris had her wallet, money and other articles of identification. Complainant's purse was recovered from the car.

Complainant arrived on the scene in a police car about five minutes after defendant and Morris were arrested. Sergeant Paz asked her if she was the woman who had been robbed,

then brought her over to a radio car, in which defendant and Morris were seated, and asked her if she recognized anyone. Complainant identified defendant as the man who had taken her purse. Gregory Taylor, the owner of the automobile employed in the crime, testified that on July 18, 1984 he went shopping and left his gray Fiat parked with the keys in it. As he left the store, he saw the car being driven away by codefendant, Morris.

The court properly denied defendant's *Wade* motion challenging the showup identification because defendant was captured near the crime scene and was viewed by the complaining witness almost immediately *(People v Riley,* 70 NY2d 523, 529). The hearing court also correctly denied defendant's *Mapp* motion to suppress the incriminating evidence seized from him upon his arrest. On appeal, defendant asserts that his arrest and search were based on unverified hearsay information provided by an "anonymous stranger", and complains that the police made no attempt to substantiate this information. Defendant did not challenge the reliability of the citizen informant below, and so has not preserved the issue for appellate review (CPL 470.05 [2]; *People v Volpe,* 60 NY2d 803). In any event, in the context of the events as they unfolded, the actions of the apparently disinterested citizen in alerting Officer Gillespie that the men he was pursuing had escaped in the described automobile, bearing a particular license plate, was the type of reasonably trustworthy information which would warrant the belief of a man of reasonable caution that the men who had committed the robbery were in fact escaping in the described vehicle *(see, People v Brnja,* 50 NY2d 366, 373).

After defendant was arrested, he was read his *Miranda* rights. He indicated to Detective Adrian Wallace that he understood each warning and then signed a card listing the *Miranda* warnings. Upon being asked if he wanted to tell the detective what happened, defendant responded that he "was sick, just trying to get some drugs." Defendant, however, refused to sign the detective's written record of his statement. In an oral decision following a *Huntley* hearing, the court credited the testimony of the People's witnesses, concluding that defendant's statement had been made voluntarily and was therefore admissible at trial.

Defendant did not specifically urge below, as he does on appeal, that declining to sign the written record of his statement was indicative of his refusal to waive his *Miranda*

rights, and so has not preserved the issue for review *(People v Tutt,* 38 NY2d 1011). Even if the issue had been preserved, we would find it to be without merit. Whether an individual knowingly waived his rights is essentially a factual issue which must be determined according to the circumstances of each case *(People v Williams,* 62 NY2d 285, 288). "[M]uch weight must be accorded the determination of the suppression court with its peculiar advantages of having seen and heard the witnesses" *(People v Prochilo,* 41 NY2d 759, 761). The hearing court's factual determination will not be reversed unless we conclude that it was clearly erroneous *(People v Bucknor,* 140 AD2d 705, *lv denied* 72 NY2d 1043). In light of these principles, we find no basis for reversing the hearing court's determination that defendant's statements were voluntarily made after waiving his *Miranda* rights.

We have considered defendant's other arguments and find them to be without merit. Concur—Ross, J. P., Carro, Wallach and Rubin, JJ. *[See,* 128 Misc 2d 203.]