[2 NYS3d 494]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PETER DiTOMMASO, Appellant.

First Department, February 24, 2015

## APPEARANCES OF COUNSEL

*Zuckerman Spaeder, LLP*, New York City (*Paul Shechtman*, *Megan Quattlebaum* and *Maggie Lynaugh* of counsel), for appellant.

*Robert T. Johnson, District Attorney*, Bronx (*Stuart P. Levy*, *Peter D. Coddington* and *Diane A. Shearer* of counsel), for respondent.

## OPINION OF THE COURT

ANDRIAS, J.

Defendant was convicted, after a jury trial, of two counts of perjury in the first degree. The only arguments he raises on appeal are that the trial court erred when it allowed the People to admit certain grand jury testimony on their direct case under the past recollection recorded exception to the hearsay rule, and when it excluded, on relevancy grounds, a document critical to his perjury trap defense. For the reasons that follow, we find that the grand jury testimony should not have been admitted into evidence because the People failed to establish that the witness's recollection of the matter was fairly fresh when recorded or adopted during the grand jury proceeding, and the witness could not attest at trial that the testimony was accurate when given.

The indictment alleges that on June 15, 2006 and March 30, 2006, respectively, defendant Peter DiTommaso and his brother, codefendant Frank DiTommaso, committed perjury when they testified before a grand jury investigating Bernard Kerik.[1] The investigation stemmed from allegations that in 1999 and 2000, Kerik, then Commissioner of the New York City Department of

---

1. Frank DiTommaso was tried jointly with defendant and found not guilty of the perjury count against him.

Corrections, accepted renovations to his apartment that were paid for by companies owned by the DiTommasos (the Interstate companies or Interstate). In return, Kerik allegedly vouched for the DiTommasos' integrity in investigations by public agencies in connection with applications by the Interstate companies for permits needed to obtain government contracts.[2]

Another witness who testified before the grand jury was Tim Woods, whose company, Woods Restoration, allegedly received payments from Interstate for renovations it performed on Kerik's apartment that were hidden by having Woods bill the work to other projects. The indictment alleges that when defendant was recalled to the grand jury on June 15, 2006 to clarify certain aspects of his March 28, 2006 testimony, he committed perjury when he testified that Woods Restoration worked on a project for St. Vincent's nursing home and that Interstate did not pay Woods Restoration for renovations to Kerik's apartment.

At the trial of the DiTommasos, when the prosecutor asked if defendant referred the Kerik job to him, Woods replied, "As far as I can remember." However, he qualified this by stating that "we've [he and the prosecutor] gone over this so many times I can't remember if this is what we discussed or what happened[,]" and that he was "kind of mixed up whether or not it's [an] independent recollection or it's you and I having gone over it so many times." When Woods persisted in his claim that he did not know whether his recollection had been reinforced or created by his discussions with the prosecutor over the past six years, the prosecutor, believing that Woods was feigning an inability to remember, sought to impeach Woods with his 2006 grand jury testimony. The court ruled that the use of the grand jury testimony for impeachment based on his purported failure to remember was "inappropriate," but suggested that "there may be other avenues" for its admission.

Upon continued direct examination, Woods stated that based on his discussions with the prosecutor, it looked like Interstate paid Woods Restoration for the Kerik job, but that he had no independent recollection of that or of "a discussion with [de-

---

**2.** The jury heard testimony that on June 30, 2006, Kerik pleaded guilty to two misdemeanors for "[taking] a gift from Interstate Companies or it's [sic] subsidiary [and speaking to] city officials about Interstate on two occasions and on another occasion permit[ting] [his] office to be used for a meeting between Trade Waste authorities and Interstate officials."

fendant] about Bernard Kerik." The prosecutor then offered Woods's grand jury testimony under the past recollection recorded exception to the hearsay rule. Defense counsel objected, and the court conducted a hearing outside the jury's presence to determine whether the foundational requirements for the past recollection recorded exception were satisfied.

At the hearing, Woods testified on direct examination by the prosecutor that he honestly was not sure about where his recollection of the Kerik job came from. While Woods repeatedly stated that he believed that he had testified truthfully and accurately before the grand jury, he also stated that "[a]s I sit here right now, I can't tell you if everything that's in that Grand Jury that I said was—is accurate, [or if] it's the result of, you know, prep sessions that we had." Woods explained:

> "What you just asked me whether or not it was truthful in the Grand Jury, I can't tell you right now, I'm so confused with the facts and what happened, and where these things happened, and the millions of prep sessions that what's in the those Grand Jury [sic], whether or not that was exactly what happened, that was a result of, you know, these prep sessions. ¶ I[,] I'm just not clear. I try my best to be truthful at all times, which is why I'm telling you, and I've been telling you that I don't have a close recollection of this whole thing. ¶ I know more about the events from our prep sessions than I actually can remember."

On cross-examination, Woods testified that he believed that he did not have a present recollection of the events during the prep sessions or when he appeared before the grand jury, and reiterated that he could not tell whether his grand jury testimony was based on his own recollection or the cumulative effect of all of the interviews and testimony he had previously given.

The trial court found that it was "clear" that when Woods testified before the grand jury "the events were fresh in his mind." The court noted that Woods had testified before the grand jury with specificity and "never stated in either the grand jury testimony or any other proceeding, deposition or interview that he was confused or that his memory was muddled in any way." Furthermore, Woods testified at the hearing that he believed that his grand jury testimony was truthful and accurate and the testimony itself was corroborated by other evi-

dence. Thus, finding that Woods "was being less than candid about his memory of the events in question," the court permitted the People to introduce, under the past recollection recorded exception to the hearsay rule, Woods's grand jury testimony stating that defendant had asked him to bill the Kerik work to other Interstate jobs, including the St. Vincent's project, which Woods Restoration had in fact not worked on.

The court rejected defendant's argument that the admission of Woods's grand jury testimony would violate his Sixth Amendment right of confrontation under *Crawford v Washington* (541 US 36 [2004]). The court reasoned that

> "although [the] Crawford decision limits the use of testimonial evidence, such as Grand Jury testimony, or where a witness is not subject to previous cross-examination, that is true only when the witness is physically unavailable at trial. Here, the confrontation clause is satisfied, as the defendants will be given the opportunity to examine and cross examine Woods, before the jury regarding his actions, what he did and did not recall, and the reasons for his failure of recollection. ¶ Thus, there is no confrontation clause violation in the admission of Woods'[s] Grand Jury testimony."

Under the past recollection recorded exception to the hearsay rule, a memorandum of a fact known or an event observed in the past may be admitted if the witness is unable or unwilling to testify as to its contents, and otherwise competent evidence establishes that "the witness observed the matter recorded, the recollection was fairly fresh when recorded or adopted, the witness can presently testify that the record correctly represented his knowledge and recollection when made, and the witness lacks sufficient present recollection of the recorded information" (*People v Taylor*, 80 NY2d 1, 8 [1992]).

"The rationale for the doctrine is that the recorded information is essential to further the truth-seeking function of the trial proceeding and that when the conditions for admission have been met, there is sufficient assurance of the accuracy of the recordation and its trustworthiness" (*Taylor*, 80 NY2d at 8-9). When a proper foundation is laid, grand jury testimony may be admitted as past recollection recorded (*see People v Linton*, 21 AD3d 909, 910 [2d Dept 2005], *lv denied* 5 NY3d 854 [2005]; *People v Holmes*, 291 AD2d 247, 248 [1st Dept 2002] ["court properly exercised its discretion in admitting a witness's

grand jury testimony as past recollection recorded since the People laid a sufficient foundation for such evidence"], *lv denied* 98 NY2d 676 [2002]; *People v Turner*, 210 AD2d 445 [2d Dept 1994], *lv denied* 85 NY2d 915 [1995]).

We now hold that protection of the integrity of these fundamental principles requires that defendant's conviction be reversed and a new trial ordered. Although there is no rigid rule as to how soon after the event the statement must have been made (*see People v Caprio*, 25 AD2d 145, 150 [2d Dept 1966], *affd* 18 NY2d 617 [1966]), here the assurance of the accuracy of the recordation and its trustworthiness are diminished by the six-year gap between the underlying events, which concluded in 2000, and Woods's grand jury testimony in 2006 (*see People v Eli*, 250 AD2d 418, 419 [1st Dept 1998] [defendant had "failed to lay a proper foundation for admission of . . . Grand Jury testimony, taken months after the event, as past recollection recorded"], *lv denied* 92 NY2d 851 [1998]; *see also People v Wilkinson*, 120 AD3d 521, 522 [2d Dept 2014] ["In light of the one-year gap between the time the witness allegedly heard the defendant's alleged inculpatory statements and the witness's grand jury testimony, the People failed to establish that the witness's recollection of the matter was 'fairly fresh when recorded or adopted' during the grand jury proceeding"]).

The People argue that Woods's testimony is admissible despite the six-year gap because the trial court found that he was "feigning a lack of memory." However, even if Woods's lack of memory demonstrates that he was unable or unwilling to testify, it does not abrogate the People's obligation to satisfy the foundational requirement that the recollection was fairly fresh when recorded or adopted.

Nor was Woods able to "presently testify that the record correctly represented his knowledge and recollection when made" (*Taylor*, 80 NY2d at 8; *see also People v Fields*, 89 AD3d 861 [2d Dept 2011], *lv denied* 18 NY3d 882 [2012]). Although Woods testified that he believed his grand jury testimony was truthful and accurate, he also testified that "[a]s I sit here right now, I can't tell you if everything that's in that Grand Jury that I said was . . . accurate"; that although he "wanted to be accurate" and "wouldn't testify untruthfully," he could not swear that "what's in the . . . Grand Jury . . . was exactly what happened," and that he could not "remember [if] . . . what I was talking to was my clear recollection or . . . was resulting from

[my prep sessions] with people." Thus, Woods's testimony reflects that although he would not have purposefully lied to the grand jury, he could not presently state that his testimony accurately reflected his own recollection of the events in question at the time that he testified before it (*see People v Wilkinson*, 120 AD3d at 522 ["Moreover, the witness's trial testimony was equivocal as to whether her testimony in the grand jury correctly represented her knowledge and recollection when given"]).

In his concurring opinion, our colleague acknowledges that the issue of whether Woods's grand jury testimony was properly received as evidence-in-chief under the past recollection recorded exception is the focus of the parties' briefs. Nevertheless, he finds that the issue is immaterial because the use of such testimony "is precluded as a matter of statute under the factual circumstances of this case." Particularly, our colleague asserts that "[p]rocedural rules prevent [the] admission [of grand jury testimony] into evidence where, as here, the witness is available for cross-examination (CPL 60.35) and, contrariwise, where the witness is not available for examination (CPL 670.10)." However, this statutory argument, which was not raised by defendant at trial or in his appellate brief, is not properly before this Court, and is in any event without merit under the circumstances of this case.

CPL 60.35 (1) states:

> "When, upon examination by the party who called him, a witness in a criminal proceeding gives testimony upon a material issue of the case which tends to disprove the position of such party, such party may introduce evidence that such witness has previously made either a written statement signed by him or an oral statement under oath contradictory to such testimony."

Pursuant to CPL 60.35 (2), such evidence "may be received only for the purpose of impeaching the credibility of the witness with respect to his testimony upon the subject, and does not constitute evidence in chief."

Grand jury testimony may be introduced into evidence for *impeachment* purposes where the witness's conflicting trial testimony on a material issue affirmatively damages the People's case (*see People v Harris*, 112 AD3d 738 [2d Dept 2013], *lv denied* 23 NY3d 1020 [2014]; *People v Faulkner*, 220 AD2d 525 [2d Dept 1995], *lv denied* 87 NY2d 901 [1995]).

However, the mere lack of recollection of events in question will not trigger the right to impeach (*see People v Ayala*, 121 AD3d 1124, 1125 [2d Dept 2014] ["the testimony of the eyewitness that she did not remember the face of the shooter and could not identify the shooter because of the passage of time between the shooting and the trial, and because of her struggles with alcohol and depression, did not tend to disprove or affirmatively damage the People's case"]).

At trial, the court denied the People's request to introduce Woods's grand jury testimony for impeachment purposes pursuant to CPL 60.35, holding that the statute is inapplicable because Woods said, "I don't remember." Defendant was not aggrieved by this ruling, which is not challenged by any party on appeal. Thus, as the concurrence concedes, the propriety of this ruling is not before us. Nor did defendant argue at trial or in his appellate brief that, where a witness is available, the admission of grand jury testimony as evidence-in-chief under the past recollection recorded exception to the hearsay rule is always barred by CPL 60.35 as a matter of law. Accordingly, this issue, raised only by the concurrence, also is not properly before us.

I find the concurrence's focus on CPL 670.10 even more perplexing. CPL 670.10 creates an exception to a defendant's right of confrontation under the Sixth Amendment to the Federal Constitution and article I, § 6 of the State Constitution. CPL 670.10 (1) states:

> "Under circumstances prescribed in this article, testimony given by a witness at (a) a trial of an accusatory instrument, or (b) a hearing upon a felony complaint conducted pursuant to section 180.60, or (c) an examination of such witness conditionally, conducted pursuant to article six hundred sixty, may, where otherwise admissible, be received into evidence at a subsequent proceeding in or relating to the action involved *when at the time of such subsequent proceeding the witness is unable to attend the same by reason of death, illness or incapacity, or cannot with due diligence be found, or is outside the state or in federal custody and cannot with due diligence be brought before the court*" (emphasis added).

Relying on *People v Green* (78 NY2d 1029 [1991]), which defendant cites in a footnote, the concurrence states that the

three categories listed in the statute are exclusive and that "since prior testimony usable as evidence in chief under the statute does not include grand jury testimony (CPL 670.10 [2]), the availability of a hearsay exception rendering it 'otherwise admissible' does not overcome the statutory exclusion." However, CPL 670.10 is inapplicable, because Woods was not "unable to attend the [trial] by reason of death, illness or incapacity," and does not bar the admission of Woods's grand jury testimony under the past recollection recorded exception to the hearsay rule under the circumstances before us.

In *Crawford v Washington* (541 US 36 [2004], *supra*), the United States Supreme Court held that it was a violation of an accused's right to confront the witnesses against him, where testimonial evidence was admitted from a presently unavailable witness and there was no prior opportunity to cross-examine the witness. Grand jury testimony falls within the class of prior testimonial evidence that implicates the Confrontation Clause in the event the witness is not available for cross-examination at trial (*id.* at 68). However, "[w]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements . . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it" (*id.* at 59 n 9). Here, Woods appeared at trial. He did not invoke his Fifth Amendment rights or otherwise refuse to testify, and was available for cross-examination. Although Woods maintained that he did not know whether his recollection had been reinforced or created by his discussions with the prosecutor over the last six years, a witness's inability to recall or remember does not deprive a defendant of the opportunity to cross-examine the witness (*see People v Linton*, 21 AD3d at 910).

In *Linton*, at the time of trial, the witness no longer remembered the details of the shooting. The appellate court held that "his grand jury testimony, which he described as accurate when given, was properly admitted as a past recollection recorded to supplement his in-court testimony, which was subject to cross-examination" (*id.*). The Court found that there was no violation of the Confrontation Clause because "the victim, whose prior grand jury testimony was read to the petit jury, testified at trial and was subject to cross-examination" (*id.*). Here, too, Woods was available for cross-examination. Unlike the nine-year-old witness in *People v Green* (78 NY2d

1029 [1991], *supra*), he had not suffered a total memory loss since his grand jury appearance. Nor did he refuse to testify, as did the witness in *People v Concepcion* (228 AD2d 204 [1st Dept 1996]). Rather, Woods testified at considerable length, albeit not in the way that the prosecutor anticipated, persisting in his claim that he did not know whether his recollection had been reinforced or created by his discussions with the prosecutor over the past six years. Thus, whether Woods could not remember, or feigned an inability to remember, CPL 670.10 is inapplicable, and the People were well within their right to seek to introduce his grand jury testimony as a past recollection recorded exception to the hearsay rule.

Asserting that state law extends greater protection to a defendant's right to confront a witness than the Sixth Amendment, the concurrence states that "defendant's right of confrontation could not be protected even with the availability of Woods for cross-examination because by the time of trial he no longer recalled, with specificity, the events in issue." However, when defendant raised his Confrontation Clause argument at trial, he relied on *Crawford*, and did not contend that he had broader rights under the State Constitution. Therefore, *Crawford* properly serves as the basis for our decision under both the Federal and State Constitutions (*see People v Bradley*, 8 NY3d 124, 126 [2006]). Furthermore, in *People v Concepcion*, on which the concurrence so heavily relies, this Court stated that finding a witness to be unavailable due to "incapacity," even where she refused to testify, is "a rather dubious proposition" (228 AD2d at 205).

Even if CPL 670.10 were theoretically applicable, the issue of whether the statute precludes the introduction of Woods's grand jury testimony on the People's direct case under the past recollection recorded exception to the hearsay rule was not raised at trial and is unpreserved for appellate review (*see* CPL 470.05; *People v Rodriguez*, 73 AD3d 815, 816 [2d Dept 2010], *lv denied* 15 NY3d 777 [2010]; *People v Lluveres*, 15 AD3d 848 [4th Dept 2005], *lv denied* 5 NY3d 807 [2005]). At trial, defendant's only reference to CPL 670.10 was in the context of his argument that "[e]ven in circumstances where a witness is rendered unavailable due to the fault of the defense and Grand Jury testimony comes in, it doesn't mean that everything comes in." Defendant did not argue that the admission of grand jury testimony is precluded in its entirety by the statute as a matter of law because it does not fall within the three exclusive categories set forth therein.

Nor should we review the issue in the interest of justice. In his brief, defendant argues that the grand jury testimony should not have been admitted because it "was given six years after the events at issue, and Woods could not attest at trial that the testimony was accurate when given." In a footnote, he states that "[n]o other exception authorizes the admission of Woods' grand jury testimony," and cites *People v Green* for the proposition that "the exception for former testimony is inapplicable." However, even if the footnote were construed as presenting the argument that grand jury testimony does not fall within the exceptions to the Confrontation Clause codified by CPL 670.10, defendant did not argue that CPL 670.10 precludes the introduction of grand jury testimony under the present recollection recorded exception to the hearsay rule in all cases as a matter of law. That argument was not raised by defendant at trial. Nor was it raised by defendant in his appellate brief.

The concurrence believes that we should nevertheless consider the issue "[s]ince defendant based his objection to the evidence on the abridgement of his right of confrontation and because that right is governed by statute in this state." However, defendant does not contest the trial court's finding that Woods's purported inability to independently remember all of the specific facts related to the Kerik project did not render him unavailable to testify within the meaning of the Confrontation Clause, and he has abandoned any arguments relating thereto by failing to address them in his brief (*see People v Price*, 113 AD3d 883, 884 n 1 [3d Dept 2014]). In any event, it has been held that "[w]hile CPL 670.10 delineates specific instances where prior testimony may be used in a criminal proceeding, it does not bar the admission of prior testimony which is otherwise independently admissible under a recognized exception to the hearsay rule" (*People v Rose*, 224 AD2d 643, 643 [2d Dept 1996]; *see also People v Rodriguez*, 73 AD3d at 816; *People v Gardner*, 237 AD2d 895 [4th Dept 1997], *lv denied* 90 NY2d 893 [1997]; *People v Turner*, 210 AD2d at 445).

In sum, the concurrence seeks to decide this appeal not on the arguments made by the parties in their briefs, but on arguments it thinks should have been presented. However, the concurrence's conclusion that prosecutors in this state are precluded in all instances by CPL 60.35 and 670.10 from using a witnesses's grand jury testimony on their direct case, even though there is a long-standing common-law exception allowing its use (*see People v Williams*, 5 Misc 3d 1014[A], 2004 NY

22

Slip Op 51368[U] [Sup Ct, Bronx County 2004]), flies in the face of the well settled principle that we should not decide appeals on the basis of arguments that are not raised by the parties. The propriety of admitting Woods's testimony under the past recollection recorded exception to the hearsay rule is the only appropriate subject of this appeal, which was thoroughly and ably argued by the parties.

In light of the foregoing, we decline to address defendant's remaining argument, which challenges an evidentiary ruling that is not binding on the court upon a new trial (*see People v Evans*, 94 NY2d 499, 504 [2000]; *People v Malizia*, 62 NY2d 755, 758 [1984], *cert denied* 469 US 932 [1984]).

Accordingly, the judgment of the Supreme Court, Bronx County (John W. Carter, J.), rendered April 2, 2013, convicting defendant, after a jury trial, of two counts of perjury in the first degree, and sentencing him to a term of five years' probation with 1,500 hours of community service and a fine of $10,000, should be reversed, on the law, and the matter remanded for a new trial.

TOM, J.P. (concurring). I write to direct attention to an issue that has not yet been resolved, although a number of Appellate Division cases treat it as such—whether prior testimony that is otherwise admissible under an exception to the hearsay rule may be admitted in contravention of CPL 670.10. While I concur in the result in this case, my rationale is constrained by the well recognized statutory restriction on the use of prior testimony, to which only a single exception (not pertinent here) has been recognized by the Court of Appeals (Peter Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 670.10 at 72-73).

The issue briefed by the parties and resolved by the majority is whether a witness's prior grand jury testimony was properly received as evidence-in-chief under the past recollection recorded exception to the hearsay rule. The threshold issue, however, is whether the evidence, though otherwise admissible, may be *used* in this criminal proceeding. Because use of the prior grand jury testimony is precluded as a matter of statute under the factual circumstances of this case, whether or not the People have established a basis for its admission under an exception to the hearsay rule is immaterial. Alternatively stated, unless it can be established that an exception to the statutory bar permits a witness's grand jury testimony to be

used against a criminal defendant, this Court need not reach the issue of whether the elements of a particular exception to the rule against hearsay have been demonstrated.

Facts

Defendant Peter DiTomasso was charged with two counts of perjury in the first degree based on his testimony before the grand jury that he or the two corporate entities jointly owned by him and his brother, Frank DiTommaso, did not pay for renovation work to an apartment owned by former New York City Police Commissioner Bernard Kerik.

In 1997, the DiTommaso brothers filed applications on behalf of their two construction companies to do business in Atlantic City, New Jersey. They were introduced to Kerik to assist in expediting the investigation of their applications before the New Jersey Division of Gaming Enforcement. The People's theory is that the brothers assisted Kerik with the renovation of his new apartment, including financing, while Kerik attempted to use his position and influence to assist them in the approval of the various investigations in conjunction with the Atlantic City permits.

The DiTommasos engaged Timothy Woods of Woods Restoration as the general contractor for the Kerik renovation. Woods had a very close personal relationship with defendant. The Kerik job was completed in or about March 2000. Kerik, who had purchased his apartment in 1999 for $170,000, sold it in 2003, after extensive renovations, for $460,000.

In December 2004, President Bush announced that Kerik was his choice for the position of Secretary of Homeland Security. Thereafter, newspaper articles appeared containing allegations about Kerik and the renovations to his apartment. An investigation led to a grand jury presentation as to whether Kerik should be charged with receiving bribes, and related crimes, for accepting the renovations to his apartment from the DiTommasos. Defendant testified before the grand jury and denied that he or his two construction companies ever made payments for the Kerik renovations.

However, Woods testified before the grand jury that when he presented a bill for certain renovation work to defendant, after Kerik had failed to pay, defendant told him to increase his billing on other jobs that Woods supervised for defendant's construction companies, unrelated to the Kerik project—in effect, billing the other projects for the Kerik job. Woods wrote invoices for the jobs that defendant told him to bill, including

the St. Vincent's Nursing Home project, which Woods had not in fact worked on. Witnesses who were familiar with the St. Vincent's project confirmed that Woods Restoration had never worked on that project. The DiTomasso brothers, through their construction companies, paid over $255,000 for the Kerik restoration. A substantial amount of this money was paid to Woods for his renovation services.

Proceedings

At defendant's trial for perjury, the People called Timothy Woods as their witness. However, Woods professed an inability to recall events to which he had previously testified, in considerable detail, before the grand jury. When the People sought to introduce that testimony, defendant objected on the ground that his right to confront the witness was being infringed (citing *Crawford v Washington*, 541 US 36 [2004] [barring, inter alia, the introduction of prior testimony taken without opportunity for cross-examination]). Defendant argued that the People were attempting to introduce contradictory hearsay evidence to impeach their own witness, testimony which "does not constitute evidence in chief" (CPL 60.35 [2]). While the People argued that supplementing a witness's recollection does not amount to impeachment, the court disagreed.[1]

The People then moved, successfully, to have the witness's grand jury testimony admitted as past recollection recorded. Counsel again objected, noting that the right of confrontation was implicated and the matter was governed by specific rules. The court opined that the Confrontation Clause " 'does not bar admission of a statement so long as the declarant is present at trial to defend or explain it' " (quoting *Crawford*, 541 US at 59 n 9). Without attempting to reconcile this pronouncement with state law, specifically the previous ruling under CPL 60.35, the court granted the People's application, at which time counsel reiterated that the court had erred in failing to treat the issue as one arising under the Confrontation Clause.

Analysis

The appellate briefs concentrate on the propriety of the trial court's resort to the past recollection recorded exception to the

---

**1.** While the propriety of this ruling is not before us, it has been observed that even accepting the People's position that their witness is not being impeached, the evidence is excludable under the rule precluding the use of prior testimony "in a manner that discloses its contents to the trier of the facts" (*People v Rudd*, 125 AD2d 422, 425 [2d Dept 1986], quoting CPL 60.35 [3]).

hearsay rule as a basis for the admission of Woods's grand jury testimony. Defendant's discussion of the statutory grounds for receipt of prior testimony is confined to a passing reference to CPL 60.35 and the Legislature's hostility to the admission of the grand jury testimony of a forgetful witness. In a footnote, defendant asserts that admission of Woods's testimony is not authorized by any other hearsay exception, including "the exception for former testimony" under CPL 670.10 (citing *People v Green*, 78 NY2d 1029 [1991]). The People's brief is devoid of any discussion of the pertinent statutes.

It should be noted that defendant's allusion to legislative hostility to the use of grand jury testimony in criminal proceedings is accurate. Procedural rules prevent its admission into evidence where, as here, the witness is available for cross-examination (CPL 60.35) and, contrariwise, where the witness is not available for examination (CPL 670.10), reflecting a policy best regarded as encompassing. CPL 670.10 ("Use in a criminal proceeding of testimony given in a previous proceeding; when authorized") allows for the receipt of "testimony given by a witness at (a) a trial of an accusatory instrument, or (b) a hearing upon a felony complaint conducted pursuant to section 180.60, or (c) an examination of such witness conditionally" under article 660, where the witness is unavailable due to "death, illness or incapacity, or cannot with due diligence be found, or is outside the state or in federal custody and cannot with due diligence be brought before the court." (CPL 670.10 [1].) However, the Court of Appeals has construed the provision to be the legislative expression of the exclusive classes of prior testimony that can be admitted in a criminal action as evidence-in-chief. "Largely a codification of common law" (*People v Arroyo*, 54 NY2d 567, 569 [1982], *cert denied* 456 US 979 [1982]), the statute is an "exception to the Sixth Amendment right of confrontation" (*People v Diaz*, 97 NY2d 109, 114 [2001]), providing "three carefully worded and enumerated exceptions" for prior testimony (*People v Harding*, 37 NY2d 130, 134 [1975]).

It is clear from case law that prior testimony is generally inadmissible as hearsay unless it satisfies the requirements of CPL 670.10 (*People v Ayala*, 75 NY2d 422, 428 [1990]) and that the three categories of prior proceedings, designated therein, that may be received into evidence are exclusive (*id.* at 429, citing *Harding*, 37 NY2d at 133-134; *People v Gonzalez*, 54 NY2d 729 [1981]). In *Ayala*, the People introduced a redacted

version of testimony given at a *Wade* hearing by an eyewitness who had since become unavailable. The Court of Appeals concluded that CPL 670.10 should be strictly construed and confined to "the three categories of prior proceedings delineated in the statute, i.e., felony hearings, article 660 conditional examinations and trials of accusatory instruments" (75 NY2d at 428). The opinion goes on to note that, unlike the felony hearing, the conditions necessary to promote vigorous cross-examination do not exist at a *Wade* hearing, which might not adequately explore—or even reach—substantive trial issues. And because no jury is present and the defendant's guilt is not being assessed, counsel might pursue strategies prejudicial to his or her client's interests, fail to interpose objections to testimony by the People's witnesses or delve into facts tending to implicate the client in the crime (*id.* at 429-430). The decision further emphasizes that the opportunity for adequate cross-examination at the prior proceeding is "an *additional*, constitutional requirement for the admissibility of prior testimony that otherwise satisfies CPL 670.10; it is not a substitute for the satisfaction of the clear statutory terms" (*id.* at 430).

It is abundantly plain that "Grand Jury proceedings are not encompassed within the statute" (*People v Robinson*, 89 NY2d 648, 652 [1997]) for similar reasons. As stated in *People v Geraci* (85 NY2d 359, 368 [1995]):

> "[H]earsay evidence such as the Grand Jury testimony at issue here is especially troubling because 'although given under oath, [it] is not subjected to the vigorous truth testing of cross-examination' [quoting, inter alia, *United States v Thevis* (665 F2d 616, 629 [5th Cir 1982], *cert denied* 456 US 1008 [1982], 458 US 1109 [1982], 459 US 825 [1982])]. Furthermore, Grand Jury testimony is often obtained through grants of immunity, leading questions and reduced attention to the rules of evidence—conditions which tend to impair its reliability."

It is settled that grand jury testimony may not be used under the circumstances presented by the instant matter. *People v Green* (78 NY2d 1029 [1991]) cited by defendant (albeit in a footnote), is directly on point. There, a nine-year-old boy who had witnessed a murder identified the defendant from a lineup as a participant in the crime. By the time of trial, however, the witness professed a complete loss of memory regarding the

events and, over objection, the court received his grand jury testimony into evidence. This Court affirmed the conviction (159 AD2d 432 [1990]), reasoning that the right of confrontation is not denied if the witness whose prior testimony is admitted is available for cross-examination at trial—precisely the rationale embraced by the majority and the trial court herein.

In a succinct reversal, the Court of Appeals remanded the matter for a new trial, stating:

> "The Grand Jury testimony of an eyewitness to the crime, which identified defendant as one of the perpetrators, did not fall within the classes of prior testimony rendered admissible in criminal proceedings by CPL 670.10. Inasmuch as the statute's 'three carefully worded and enumerated exceptions' are exclusive (*People v Harding*, 37 NY2d 130, 134; *see*, *People v Ayala*, 75 NY2d 422, 429), the trial court erred in allowing the witness' prior testimony to be admitted as evidence-in-chief against the defendant. Under the circumstances of this case, in which identification was the central issue, we cannot conclude that the error was harmless" (*Green*, 78 NY2d at 1030).

The statute expressly addresses the use of prior testimony "otherwise admissible" (CPL 670.10 [1]), and since prior testimony usable as evidence-in-chief under the statute does not include grand jury testimony (CPL 670.10 [2]), the availability of a hearsay exception rendering it "otherwise admissible" does not overcome the statutory exclusion. Further, while the witness was available for cross-examination *at trial*, which is acceptable under federal law (*Crawford*, 541 US at 59 n 9), it contravenes state law requiring an opportunity for cross-examination during the prior proceeding (*Ayala*, 75 NY2d at 430 [construing the opportunity for cross-examination as "an *additional*, constitutional requirement" for the receipt of testimony otherwise satisfying CPL 670.10]). As Woods's grand jury testimony was the only evidence against defendant, the error was not harmless. Thus, the matter is indistinguishable from *Green*.

While acknowledging that CPL 670.10 is an "exception to a defendant's right of confrontation" and stating that it does not bar the use of Woods's grand jury testimony as evidence-in-chief, the majority resorts to federal case law to conclude that "CPL 670.10 is inapplicable." It further opines that this Court

should not consider CPL 670.10 in deciding this appeal because defendant made no mention of the statute in asserting his objection to the admission of Woods's prior testimony at trial.

Since defendant based his objection to the evidence on the abridgment of his right of confrontation and because that right is governed by statute in this state, it would seem that we have not only the latitude but the duty to take judicial notice "without request" of provisions pertaining to matters necessary to the disposition of an appeal (CPLR 4511 [a]). Furthermore, the existence of a state statute renders federal case law inapposite to the extent that the state-law provision extends greater protection to a defendant's right to confront witnesses against him than the Sixth Amendment, as construed by the United States Supreme Court. State law mandates that the right to confront the witness be available at the time testimony is taken so as to ensure its reliability (*see Geraci*, 85 NY2d at 368). This state right of confrontation is not diminished by federal case law deeming the availability of the witness for cross-examination at the time the testimony is introduced at trial to be sufficient to protect the defendant's confrontation right as a matter of federal constitutional interpretation (*e.g. Crawford*, 541 US at 68). Moreover, defendant's right of confrontation could not be protected even with the availability of Woods for cross-examination, because by the time of trial he no longer recalled, with specificity, the events in issue.

The majority's analysis proceeds on the tenuous proposition that CPL 670.10 "does not bar the admission of prior testimony which is otherwise independently admissible under a recognized exception to the hearsay rule" (quoting *People v Rose*, 224 AD2d 643, 643 [2d Dept 1996]). This sweeping declaration is predicated on a line of cases holding that grand jury testimony may be introduced against a defendant where the testimony constitutes a declaration against penal interest (*People v Rodriguez*, 191 AD2d 597, 598 [2d Dept 1993], *lv denied* 82 NY2d 725 [1993]; *People v Koestler*, 176 AD2d 1207, 1208 [4th Dept 1991]; *see also People v Rodriguez*, 73 AD3d 815, 816 [2d Dept 2010] [dictum]; *cf. People v Gardner*, 237 AD2d 895 [4th Dept 1997], *lv denied* 90 NY2d 893 [1997] [testimony from prior trial]). The Second Department cited, in support of its pronouncement, *People v Morgan* (151 AD2d 221, 224 [4th Dept 1989], *affd* 76 NY2d 493 [1990]). However, in affirming *Morgan*, the Court of Appeals restricted its analysis to the question of whether the testimonial statement admitted

truly qualified as an admission against penal interest, agreeing that it did not. Significantly, the Court went on to state, "We do not decide the question whether Grand Jury testimony can qualify for this hearsay exception" (*id.* at 499). Thus, the Court of Appeals has not recognized even the declaration against penal interest exception to the hearsay rule, much less each and every other such exception, as a permissible basis for the receipt of a witness's grand jury testimony as evidence-in-chief.

As to preservation of the issue upon review, it is acknowledged that defendant cites *Green* in his brief for the proposition that "the exception for former testimony" under CPL 670.10 does not authorize the receipt of Woods's prior grand jury testimony. The majority finds *Green* to be distinguishable on the ground that Woods did not sustain a total memory loss and was available to testify at trial; thus, he was not "unavailable" as provided under the statute, which the majority concludes is therefore inapplicable.

Significantly, the Court of Appeals did not consider the availability of the child witness in *Green* to preclude applying the statute to dispose of the appeal. That the Court of Appeals did not arrive at its decision by simply finding the statute to be facially inapplicable, as the majority proposes, merely illustrates that CPL 670.10 is considered to be a reflection of state policy on the use of prior testimony in criminal proceedings. Indeed, this Court's own jurisprudence supports the application of *Green* to factually identical circumstances in which the witness, likewise available for examination at trial, portrayed an inability, if not outright refusal, to testify (*People v Concepcion*, 228 AD2d 204, 205 [1st Dept 1996] [construing the attempt to equate the inability to testify with unavailability under the statute as "a rather dubious proposition"]). As we stated in *Concepcion*, "[T]he only recognized exception to the common-law rule barring the admission of prior Grand Jury testimony in a criminal prosecution [is] where the defendant's own misconduct has procured the witness's unavailability at trial" (*id.*). We found that the stated exception was inapplicable and that the introduction of the "Grand Jury testimony on the People's direct case, which raised hearsay and Confrontation Clause issues, was in clear violation of the limited statutory authorization for the use of prior testimony" (*id.*). Thus, I conclude that I am breaking no new ground by invoking CPL 670.10 and *Green* to resolve this appeal, in which a Confrontation Clause issue is clearly presented.

While unnecessary to the disposition of this appeal, it should be noted that the function of the past recollection recorded doctrine is not as extensive as the People presume. Even when properly admitted, a memorandum received as past recollection recorded "is not independent evidence" but merely "supplementary to the testimony of the witness," at trial, who caused the memorandum to be recorded, and the testimony and the memorandum's contents "are to be taken together and treated in combination as if the witness had testified to the contents of the writing based on present knowledge" (*People v Taylor*, 80 NY2d 1, 9 [1992]). In the matter before us, Woods failed to provide the requisite supporting trial testimony, and his grand jury testimony cannot stand on its own, even if it could be received into evidence.

The cases cited by the majority in support of the conclusion that, assuming a proper foundation, "grand jury testimony may be admitted as past recollection recorded," cannot be reconciled with *Green* and *Concepcion*, nor with the strict construction afforded to CPL 670.10 as reflected in *Robinson*, *Ayala*, *Gonzalez* and *Harding*, all of which declined to extend the statute to embrace testimony taken in the course of proceedings not specified in the statute. For instance, in *People v Linton* (21 AD3d 909, 909-910 [2d Dept 2005], *lv denied* 5 NY3d 854 [2005]), which was also relied upon by the trial court, a "shooting was witnessed by several individuals who testified at trial." There, "[t]he record did not establish that the complainant refused to testify, but rather, at the time of the trial, he no longer remembered the details of the shooting," and his grand jury testimony was received "to supplement his in-court testimony" (*id.* at 910). Significantly, the *Linton* decision does not mention CPL 670.10; nor does it cite any authority that would support the admission of grand jury testimony under a common-law exception to the hearsay rule. In the alternative, the Second Department held that any error "was harmless beyond a reasonable doubt" in view of "the uncontradicted testimony of the two eyewitnesses" (*id.*). In *People v Holmes* (291 AD2d 247, 248 [2002], *lv denied* 98 NY2d 676 [2002]), this Court likewise endorsed the receipt of grand jury testimony as past recollection recorded.[2] We similarly found, in the alternative, that "this evidence could not have caused defendant any prejudice because it was entirely cumulative to

---

2. The decision does not disclose the circumstances under which the prior testimony was admitted.

the testimony of other witnesses" (*id.* at 248). The conclusion reached in these cases in regard to admissibility fails to distinguish between the non-testimonial nature of the evidence admitted in such cases as *People v Taylor* (80 NY2d 1 [1992], *supra* [telephone message taken by a detective]), cited in *Linton*, and *People v Lewis* (232 AD2d 239 [1st Dept 1996], *lv denied* 89 NY2d 865 [1996] [undercover police officer's buy report]), cited in *Holmes*, and the testimonial evidence before the Appellate Division in each matter (*see also People v Turner*, 210 AD2d 445 [2d Dept 1994], *lv denied* 85 NY2d 915 [1995], citing *Taylor*).

With respect to past recollection recorded generally, the Court of Appeals has made plain that the rationale underpinning the doctrine is that the recorded information is essential and that "when the conditions for admission have been met, there is sufficient assurance of the accuracy of the recordation and its trustworthiness" (*Taylor*, 80 NY2d at 8-9). It is apparent that the testimony improperly received by the trial court fails to meet the requirement of trustworthiness and should not have been admitted. As reflected by both governing statutory and case law, grand jury testimony is regarded as inherently unreliable—precisely due to the lack of opportunity to confront the witness (*Geraci*, 85 NY2d at 368). Thus, it is unnecessary to reach the issue of whether Woods's recollection of events possesses the requisite assurance of reliability. Although the passage of time between an event and its recordation is certainly one factor bearing upon reliability, memory is highly idiosyncratic. While some people cannot remember what they ate for breakfast, others can recall what they had for a given meal on a given date a decade in the past, along with who was present, what was discussed and what transpired before and afterwards (an ability clinically known as hyperthymesia or highly superior autobiographical memory). Reliability should be the touchstone of a court's evaluation of trustworthiness predicated on such factors as the witness's ability to recall events, the notoriety of the events at issue and their significance to the witness. Here, given Kerik's well known status, his constant visibility in the media throughout the years from when the renovation work began up to the time of Woods's grand jury testimony and the publicity storm generated when Kerik's apartment renovations came to light, the events of the Kerik renovations should have been fairly fresh in Woods's mind during his grand jury testimony, even though the work

was performed six years earlier. The factual circumstances tend to support the finding of the trial court that Woods was feigning an inability to recall the events in issue. Thus, I do not favor the imposition of an arbitrary limit on the time at which the memorandum is recorded, as alluded to by the majority, but rather consideration of all of the relevant circumstances in the assessment of its reliability.

FRIEDMAN and SAXE, JJ., concur with ANDRIAS, J.; TOM, J.P., concurs in a separate opinion.

Judgment, Supreme Court, Bronx County (John W. Carter, J.), rendered April 2, 2013, reversed, on the law, and the matter remanded for a new trial.